UNITED STATE DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL J. BYRD,

    Plaintiff,

v.

RONALD J. RICE, et al.,

    Defendants.

_____/

Case No: 3:10-cv-232-J-25MCR

### DEFENDANT HOANG'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant, LONG DUY HOANG, M.D. (hereinafter "Dr. Hoang"), by and through the undersigned counsel, and pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, hereby submits this Motion to Dismiss Plaintiff's Second Amended Complaint and in support thereof states as follows:

1. This is a civil rights action brought by Plaintiff MICHAEL BYRD, an inmate in the custody of the Florida Department of Corrections ("FDOC") at Columbia Correctional Institution ("CCI") in Lake City, Florida, pursuant to 42 U.S.C. §1983 and the 8th and 14th Amendments to the United States Constitution seeking damages for Defendants' deliberate indifference to his alleged serious medical needs. (Doc. 66 at ¶ 1.)

2. Dr. Hoang is a physician employed at CCI and responsible for providing medical care to inmates. (Doc. 66 at ¶ 13.)

3. Plaintiff alleges that Dr. Hoang and other named defendants failed to provide adequate medical treatment after he sustained an injury to his right knee. (Doc. 66.)

4. The injury occurred when Plaintiff twisted his knee while playing basketball at CCI's recreation field on January 9, 2009. (Doc. 66 at ¶ 16.)

5. On that same date, he was evaluated by the prison medical personnel and diagnosed with a "right knee edema." (Doc. 66 at ¶ 17.) Plaintiff was prescribed medication and instructed to limit exercise to his right knee until the edema subsided. (Doc. 66 at ¶ 18.)

6. On January 13, 2009, the prison medical personnel took an x-ray of Plaintiff's right knee which revealed swelling and bone spurs. (Doc. 66 at ¶ 19.)

7. On January 16, 2009, Plaintiff fell outside of the CCI dining facility and aggravated his right knee injury. (Doc. 66 at ¶ 28.)

8. On that same date, Plaintiff was taken to the CCI Medical Center where he was treated by Dr. Hoang. (Doc. 66 at ¶ 21.) The record reflects that this was the first time that Plaintiff received treatment from Dr. Hoang for his right knee injury.

9. The applicable medical records reveal that Dr. Hoang obtained Plaintiff's vital signs, took a medical history, performed a physical examination, reviewed the x-ray which had been taken on January 16th, prescribed medication, informed the Plaintiff to use crutches and his knee brace as instructed, and ordered a CAT Scan. (Doc. 66 at ¶ 21 -24 and Exhibits "D," "E" and "F.")

10. On January 29, 2009, Plaintiff was transported to the Reception and Medical Center ("RMC") in Lake Butler, Florida, where he underwent an x-ray and was seen by Defendant Edel Edward Franco, M.D. (hereinafter "Dr. Franco.") The Plaintiff waited for the CAT Scan but the CAT Scan was never performed. (Doc. 66 at ¶ 25 and 26.)

2

11.     Defendant Teresa Dowling was responsible for scheduling the CAT Scan that was never performed. (Doc. 66 at ¶ 30.)

12.     On March 9, 2009, Dr. Hoang saw Plaintiff and completed a Consultation Request/ Consultant's Report in which he set forth the nature of Plaintiff's injury and requested that the Rheumatology Clinic evaluate and treat the Plaintiff. (Doc. 66 at ¶ 31 and Exhibit "J.") On this date, Dr. Hoang also reviewed the January 29th x-ray report of Dr. Franco - which he thought was the CAT Scan report - and stated that the report revealed no bone or joint abnormality. (Doc. 66 at ¶ 31 and Exhibit "J.")

13.     On May 13, 2009, Dr. Hoang saw Plaintiff yet again and prepared a Consultation Request/ Consultant's Report in which he set forth the nature of Plaintiff's injury and requested that the Orthopedic Clinic evaluate and treat the Plaintiff. (Doc. 66 at ¶ 34 and Exhibit "L.")

14.     On June 9, 2009, Plaintiff was taken to the RMC for an orthopaedic evaluation by M. Lord, M.D. (hereinafter "Dr. Lord") who diagnosed the Plaintiff with a neglected patella tendon rupture in his right knee. (Doc. 66 at ¶ 34 and Exhibit "M.")

15.     On or about June 29, 2009, Dr. Lord performed surgery to repair Plaintiff's right knee. Dr. Lord's Post Operative Diagnosis was "chronic patellar tendon rupture right knee with retracted patella." He also advised the Plaintiff that he is "going to have a stiff, weak knee as a result of this injury and time delay." (Doc. 66 at ¶ 34 and Exhibit "N.")

16.     As previously indicated, Plaintiff has filed the a Second Amended Complaint in which he contends that Dr. Hoang violated the Eighth Amendment's prohibition on cruel and unusual punishment by being deliberately indifferent to his right knee injury which he classifies

3

as a serious medical condition. (Doc. 66.)

17.  Dr. Hoang contends that Plaintiff has failed to state a constitutional claim and that his claims against this Defendant should be dismissed as a matter of law.

## MEMORANDUM OF LAW

### A. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), a complaint should be dismissed for failure to state a claim it if appears beyond a doubt that the plaintiff can prove no set of facts that would entitle himself to relief. *Am. Ass'n of People with Disabilities v. Smith*, 227 F. Supp. 2d 1276, 1280 (M.D. Fla. 2002). When a federal court reviews a complaint's sufficiency, the issue is not whether the plaintiff will ultimately emerge victorious, but whether the claimant is entitled to offer evidence to support the claims. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). In evaluating a motion to dismiss on its merits, courts must limit their consideration to the pleadings and attached exhibits. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). However, when on the basis of a dispositive issue of law, no construction of the actual allegation of a complaint will support the cause of action, dismissal of the complaint is appropriate. *Executive 100, Inc. v. Martin County*, 922 F.2d 1156 (11th Cir. 1991).

### B. Plaintiff Cannot Demonstrate an Eighth Amendment Violation

To state a claim under §1983, a plaintiff must allege: (1) a violation of a specific constitutional right or federal statutory provision; (2) was committed by a person acting under color of state law. *Milton v. Turner*, 445 Fed. Appx. 159, 161 (11th Cir. 2011). The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." *U.S. Const. Amend.*

4

*VIII.* For medical treatment to rise to the level of a constitutional violation, the care must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Nimmons v. Aviles*, 409 Fed. Appx. 295, 297 (11th Cir. 2011) (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991)).

In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The standard of deliberate indifference contains both objective and subjective components. To state a claim of deliberate indifference, a plaintiff must allege: (1) a serious medical need; (2) deliberate indifference to that need by the defendant; and (3) causation between the defendant's indifference and the plaintiff's injury. *Milton*, 445 Fed. Appx. at 161. The seriousness of the medical need is an objective inquiry, and encompasses injuries which have been diagnosed by a physician as mandating treatment, and injuries that if left unattended pose a substantial risk of serious harm. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).

Once a serious medical need is shown, the plaintiff must prove the subjective inquiry of whether the defendant acted with deliberate indifference, and each defendant is "judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). To establish deliberate indifference, a plaintiff must allege (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence. *Youmans v. Gagnon*, 626 F.3d 557, 564 (11th Cir. 2010) (per curiam). In order for a denial of medical care to rise to the level of deliberate indifference, the treatment must

be more than "medical malpractice actionable under state law." *Milton*, 445 Fed. Appx. at 162 (citing *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000)).

A "simple difference in medical opinion" does not constitute deliberate indifference. *Milton*, 445 Fed. Appx. at 162 (citing *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)). "The question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a 'classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Butler v. Prison Health Services, Inc.*, 294 Fed. Appx. 497, 499 (11th Cir. 2008) (citing *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (internal citations omitted)). Additionally, "the official may escape liability for known risks 'if [he] responded reasonably to the risk, even if the harm ultimately was not averted.'" *Butler*, 294 Fed. Appx. at 499 (citing *Chandler v. Crosby*, 379 F.3d 1278, 1290 (11th Cir. 2004).

In *Nimmons*, a state prisoner brought a § 1983 action against a prison doctor, alleging that the doctor's inadequate treatment of a knee injury was deliberately indifferent to his medical needs. 409 Fed. Appx. at 296. The plaintiff, Nimmons, sustained a knee injury and sought treatment from the defendant doctor; but after reviewing his x-ray, the defendant doctor told the plaintiff that he had only bruised some tendons. *Id.* About a year after his fall, an orthopedist performed an operation on the plaintiff's knee and told him he would have problems for the rest of his life because of the improper treatment he received after the incident. *Id.* The district court determined that the defendant provided the plaintiff with adequate medical care and that, therefore, the plaintiff had not demonstrated deliberate indifference. *Id.*

6

The Eleventh Circuit affirmed the district court's decision based on the facts that shortly after the fall the defendant saw the plaintiff, examined his knee, and ordered an x-ray. *Id.* at 297. The x-ray revealed possible problems with the plaintiff's knee, but the defendant believed the knee problems to not be acute at the time. *Id.* Nearly eight months later, the defendant again examined the plaintiff's knee, ordered another x-ray, and referred him to an orthopedist, who performed arthroscopic surgery to repair his knee after expressing concern about the knee's prior treatment. *Id.* The Eleventh Circuit held there was no deliberate indifference or constitutional violation even where a later doctor expresses concern about the knee's prior treatment. *Id.* at 297-98.

In this case, Plaintiff was seen by Dr. Hoang on January 16, 2009, after he aggravated his right knee injury outside the CCI dining facility. (Doc 66 at ¶ 21) During this visit, the applicable medical records reveal that Dr. Hoang obtained Plaintiff's vital signs, took a medical history, performed an examination, reviewed an x-ray which had been taken on January 16th, prescribed medication, and informed the Plaintiff to use crutches and his knee brace as instructed. (Exhibits "D," "E" and "F.") Dr. Hoang also ordered a CAT Scan to "rule out any tendon damage." (Doc 66 at ¶ 24) Plaintiff's allegation that Dr. Hoang failed to provide any actual medical treatment during this visit (Doc 66 at ¶ 23) is simply not supported by the evidence.

In addition to the treatment set forth above, Dr. Hoang treated Plaintiff on March 9th and May 13th. During the March 9th visit, he examined the Plaintiff and noted that he had right knee swelling with pain/limping and that the pain medication which had been prescribed was not providing relief. (Exhibit "J.") Dr. Hoang referred the Plaintiff to the Rheumatology Clinic at the

7

RMC with the instruction to "please evaluate and treat." (Exhibit "J.") The applicable medical record also reveals that during this visit, Dr. Hoang thought that January 29th x-ray report of Dr. Franco was the CT Scan report that he had previously ordered. Similarly and during the May 13th visit, Dr. Hoang noted that Plaintiff had suffered a "dislocation upward of the knee cap" and this time referred him to the Orthopedic Clinic at the RMC with the instruction to again "please evaluate and treat." Even assuming that Dr. Hoang mistook the x-ray report for a CT Scan report, the care which he provided and recommended during this March 9th and May 13th visits were not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."

The record reveals that Dr. Hoang treated the Plaintiff on at least three occasions after the Plaintiff aggravated his right knee injury. During these three visits, Dr. Hoang took the Plaintiff's medical history, obtained Plaintiff's vital signs, performed a physical examination of the Plaintiff, ordered a CT Scan, reviewed x-ray/diagnostic reports which had been taken on January 16th and 29th, prescribed medication, informed the Plaintiff to use his crutches and his knee brace as instructed, and referred Plaintiff for an evaluation and additional treatment to both the Rheumatology Clinic and the Orthopedic Clinic at the RMC.

Where an inmate has received medical attention, and the dispute is over the adequacy of that attention, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. *Harris v. Thigpen*, 941 F.2d 1495, 1507 (11th Cir. 1991). Disputes regarding the level of treatment or the existence of other treatment options do not alone evidence cruel and unusual punishment. *Estelle*, 429 U.S. at 107. The fact that Plaintiff

8

subsequently underwent a procedure on his knee by another doctor who expressed concern about the prior treatment of Plaintiff's knee does not mandate the conclusion that Dr. Hoang acted in an unconstitutional sense and/or was deliberately indifferent to Plaintiff's medical needs. *See Farmer v. Brennan*, 511 U.S. 825 (1994) (an official who actually knew of a substantial risk to an inmate's health may be free from liability if the official reasonably responded to the risk, even if the inmate ultimately suffered harm); *Adams*, 61 F.3d at 1545 (whether defendant "should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding" constitutional liability).

Plaintiff has failed to allege any set of facts that would entitle him to relief against Defendant Hoang and has thus failed to state a claim upon which relief can be granted. It is clear based on the facts alleged in the Plaintiff's Second Amended Complaint and its attached exhibits that Plaintiff received proper medical treatment by Dr. Hoang. Even assuming, *arguendo*, that some portion of this treatment may be considered an inadvertent failure to provide adequate medical care," the actions taken cannot rise to a cognizable Eighth Amendment claim. *Estelle*, 429 U.S. at 105.

C. **Conclusion**

Based on the foregoing, the claims against Dr. Hoang which are set forth in Plaintiff's Second Amended Complaint should be dismissed as a matter of law as Plaintiff has failed to state a cause of action for a violation of the Eighth Amendment.

VERNIS & BOWLING
OF NORTH FLORIDA, P.A.


/s/ Christopher J. Saba
Christopher J. Saba
Florida Bar No. 0092016
Leonard T. Hackett
Florida Bar No. 0420107
4309 Salisbury Road
Jacksonville, FL 32216
Tel.: (904) 296-6751
Fax.: (904) 296-2712
csaba@florida-law.com
lhackett@florida-law.com

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 19, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to: Andrew J. Steif, Esq., 50 N. Laura Street, Suite 3900, Jacksonville, Florida 32202 and Marcus O. Graper, Assistant Attorney General, The Capitol, PL-01, Tallahassee, Florida 32399-1050.

/s/ Christopher J. Saba
Attorney